UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal Action No. 5: 22-010-DCR |
| Plaintiff/Respondent, ) | and |
| ) | Civil Action No. 5: 25-290-DCR |
| V. ) | |
| ) | |
| MICHAEL A. BYRD, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

*** *** *** ***

Defendant/Movant Michael Byrd was indicted for conspiring to distribute 100 grams or more of fluorofentanyl, in violation of 21 U.S.C. §§ 841 and 846 (Count 1); possessing with intent to distribute 100 grams or more of fluorofentanyl (Count 2) and 10 grams or more of fluorofentanyl (Count 3), both in violation of 21 U.S.C. § 841. [Record No. 60] Byrd pled guilty to all three counts in the second superseding indictment without a written plea agreement. [Record No. 134] He was later sentenced to 420 months of imprisonment to be followed by ten years of supervised release on each count to run concurrently. [Record No 170]

Byrd has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based on claims of ineffective assistance of counsel. [Record No. 222] However, the motion will be denied because Byrd has failed to establish that his attorney's assistance fell below an objective standard of reasonableness or that he was prejudiced by counsel's performance.

I.

After law enforcement responded to a narcotics overdose, the remaining occupant in the residence agreed to assist police as a cooperating individual ("CI"). [Record No. 218-1 at 2] The CI identified a drug trafficker with the name "Bird" which investigators later determined to be Defendant Michael Byrd. *Id.* Byrd agreed to supply the CI with narcotics. [Record No 159 at 20]

Investigators began surveillance at the residence where the transaction was to occur. [Record Nos. 159 at 20 and 218-1 at 2] They anticipated that Byrd would arrive in a Ford Explorer identified during prior surveillance as a vehicle belonging to Byrd and his girlfriend and co-Defendant Savannah Asberry. [Record No 159 at 20] Officers observed the Explorer and a sedan pulling into the parking lot. [Record No. 218-1 at 2]

Michael Byrd's nephew and co-Defendant, Je'Von Byrd, was a passenger in the Explorer. *Id.* at 1–2. Michael Byrd was a passenger in the sedan. *Id.* at 3. Law enforcement approached and patted down Je'Von Byrd after observing him reaching towards his waist. *Id.* at 2–3. They found a firearm and 924.4 grams of fluorofentanyl on his person. *Id.* at 3. Officers uncovered two more bags with over three kilograms and 690.10 grams of fluorofentanyl in the Explorer. *See id.*

No drugs or weapons were found on Michael Byrd or in the sedan. [Record Nos. 159 at 22 and 218-1 at 3] However, after securing a warrant, "[t]hree additional firearms, suspected narcotics and drug paraphernalia, including, but not limited to, a hydraulic press, baggies, operational digital scales, cutting agents, and a blender" were found in the apartment leased to Michael Byrd. [Record No. 218-1 at 3–4] The substances were later identified as 65.138

grams of fentanyl, 0.223 grams of cocaine, and 5.155 grams of fluorofentanyl and fentanyl. *Id.* at 4. Michael Byrd was taken into state custody and later released. [Record No. 159 at 22]

Roughly one year later, an officer observed a vehicle (registered to Michael Byrd) illegally blocking a sidewalk. [Record No. 218-1 at 3, 5] Byrd ran as the officer approached. *Id.* at 3. He threw off his jacket and reached into his pants during the attempted escape, launching something over a fence. *Id.* The jacket contained $3,530 and a cell phone. *Id.* The tossed bag that had "broken or burst" was identified as 84.6 grams of fentanyl. And again, Byrd was arrested. *Id.*

Even after being arrested, Byrd continued to use co-Defendant Asberry to coordinate his drug-trafficking operation. [Record No. 218-1 at 3] One month into detention, he sent Asberry to Louisville to pick up narcotics. *See id* at 3, 11. On her way back, and while on the phone with Byrd, Asberry was pulled over during a traffic stop. *Id.* at 4. On the jail call, Byrd can be heard asking if she "locked the shit in the thing" to which she replied that she had "everything" in the car. [*See* Record Nos. 218-1 at 4 and 159 at 23.] A search of Asberry's car uncovered a Glock pistol and "13.87 grams of cocaine, 60.605 grams of fentanyl, and 56.062 grams of methamphetamine." [Record No. 218-1 at 4] A grand jury later indicted Je'Von Byrd, Michael Byrd, and Savanna Asberry. *Id.*

After pleading guilty to all three counts, a Presentence Investigation Report ("PSR") was prepared for Michael Byrd. The PSR included a U.S.S.G. § 2D1.1(b)(1) firearm possession enhancement, a § 2D1.1(b)(12) maintaining premises to manufacture or distribute enhancement, and a § 3B1.1(c) organizer or leader of criminal activity enhancement. [Record No. 173] After hearing testimony on the matter, the Court overruled all three of Byrd's objections concerning each enhancement and sentenced him to 420 months of imprisonment,

to be followed by ten years of supervised release. [Record Nos. 184 and 188] The United States Court of Appeals for the Sixth Circuit affirmed the enhancements and quantity of drugs attributed to Byrd. [Record No 218-1]

## II. Legal Standard

To prevail on a § 2255 motion, the movant bears the burden of showing that: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003). For a non-constitutional error, the movant must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). A § 2255 movant bears the burden of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam).

The Sixth Amendment to the United States Constitution guarantees that criminal defendants are entitled to the right of assistance of counsel. *Beasley v. United States*, 491 F.2d 687, 692 (6th Cir. 1974). To succeed on a claim of ineffective assistance of counsel, the defendant must satisfy two elements: (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Courts are highly deferential in evaluating counsel's performance and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–90. Therefore, a defendant must show that his counsel "made errors so serious that

Case: 5:22-cr-00010-DCR-CJS   Doc #: 232   Filed: 10/29/25   Page: 5 of 18 - Page ID#: 1431

[counsel was] not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Regarding prejudice, a defendant must show that absent counsel's errors, the outcome of his proceedings would have been different. *Id.* at 694–95.

### III. Analysis

**Ground One: ineffective assistance of trial counsel concerning purported deficiencies in charging document, rendering guilty plea unknowingly and unintelligently entered.**

A defendant challenging the validity of his guilty plea based upon a claim of ineffective assistance of counsel shows prejudice by demonstrating "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). That said, "[a]bsent extraordinary circumstances," when a district court "has scrupulously followed the required procedure" during a plea colloquy, "the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 563 (6th Cir. 1990).

A defendant's guilty plea in open court carries with it a presumption of verity that may not be overborn by later conclusory statements unsupported by specifics. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel). Therefore, claims that a defendant would not have pled guilty, but for counsel's alleged error, are insufficient when they are "wholly incredible" when viewing the record in its entirety. *Id.* (citing *Machibroda v. United States*, 368 U.S. 487, 495–96 (1962)).

**Argument One:** failing to argue that second superseding indictment was "fatally defective because . . . the time frame of the conspiracy is open-ended in both directions."

- 5 -

[Record No. 222 at 7] In Byrd's second superseding indictment, count one includes this temporal language: "[b]eginning in or about January 2021, the exact date unknown, and continuing through in or about May 2022, the exact date unknown." [Record No. 60 at 1] And during Byrd's plea colloquy, the undersigned stated, "You agree that at some point during the dates charged, and it begins in January of last year and it could go up through May of this year, that at some point during that time charged, that you did enter into an agreement [*i.e.*, conspiracy] with at least one other person," to which Byrd responded, "Yes." [Record No. 159 at 28]

There is no open-ended timeframe for the conspiracy charge as Byrd contends. And because a conspiracy involves an agreement between two or more persons, ordinarily a prosecutor would be unable to pinpoint an exact date that the conspiracy began or ended. As the government asserts, the charging document "sufficiently allege[ed] the operative periods of the conspirac[y] to permit the preparation of a defense and to avoid double jeopardy problems." [Record No 229 at 4 (quoting *United States v. Hultgren*, 713 F.2d 79, 89 (5th Cir. 1983))] Byrd identifies no error of counsel for failing to raise a meritless claim.

**Argument Two:** failing to argue that Count 1 omits possessing with intent to distribute and therefore only charges conspiracy. [Record No. 222 at 9] Byrd identifies no error here. And the case he relies on, *United States v. Colon*, 268 F.3d 367 (6th Cir. 2001), proves that point. [Record No. 230 at 4–5] There, the defendant argued that he was entitled to the lesser jury instruction for possession of a controlled substance. *See United States v. Colon*, 268 F.3d 367, 375 (6th Cir. 2001). But the panel disagreed and determined that "[s]imple possession has a required element that need not be proven [the defendant] to be convicted of the conspiracy charge. That element is one of 'possession.'" *Id.* In short, Byrd's claim that count

one deficiently alleges conspiracy because it omits *possession* (and instead only alleges that the codefendants intentionally conspired to *distribute* controlled substances) is without merit.

**Argument Three:** failing to argue that Counts 2 and 3 do not "track the statutory language" by saying "fluorofentanyl" instead of "any analogue of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propenamide." [Record No. 222 at 10–11] Byrd argues a distinction without a difference. As the government correctly notes, an "indictment, of course, need not quote the statutory language to be legally sufficient." [Record No 229 at 5 (quoting *United States v. Bullock*, 914 F.2d 1413, 1414 (10th Cir. 1990) (citing *Hamling v. United States*, 418 U.S. 87 (1974))] Rather, it "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Id.* (quoting Fed. R. Crim. P. 7(c)). The government further contends that "[u]sing technical chemical terminology from § 841(b)(1)(A)(vi) or (B)(vi) instead of the 'plain' and 'concise' term "fluorofentanyl" may, if anything, raise Rule 7(c) questions." *Id.* The undersigned agrees. Byrd's counsel cannot be deficient for failing to argue a frivolous claim like the one Byrd advances here.

**Argument Four:** failing to argue that Counts 2 and 3 were "fatally defective" for "failing to list" the "specific statutory penalty provision." [Record No. 222 at 10–11] Byrd's final claim in ground one contends that his attorney was deficient for failing to argue that the second superseding indictment was deficient because counts two and three did not cite the statutory provision for the prior serious violent felony enhancement. *See id.* at 11. However, the United States Supreme Court has held that penalty provisions that allow the imposition of a sentence enhancement are not separate crimes and, as such, need not be charged in the indictment. *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998); *see also United States v. Brewer*, 853 F.2d 1319, 1322 (6th Cir. 1988) (holding that the Armed Career Criminal

Act is not separate offense requiring the government to specifically plead it in an indictment). In any event, as the United States argues, the "indictment need not cite to an enhanced penalty provision, but instead must only make a defendant aware of the possibility that enhanced penalty provisions could apply." [Record No. 229 at 6 (citing *United States v. Ocampo*, 890 F.2d 1363, 1373 (7th Cir. 1989))] Here, the second superseding indictment does just that. Further, the plea colloquy demonstrates that Byrd was on notice that the enhanced penalty may apply to counts two and three which would result in a fifteen-year-to-life sentence and ten-year-to-life sentence respectively. [Record No. 159 at 9–10] And yet, he still pled guilty.

In summary, despite Byrd's arguments to the contrary, the counts in the second superseding indictment provided ample notice of the charges against him. *See Hamling*, 418 U.S. at 117. In addition to these claims falling short of the deficient performance prong, they also fail to demonstrate prejudice. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) (noting counsel is not ineffective for failing to raise a meritless claim). Had his attorney objected to these purported deficiencies in the second superseding indictment and filed a motion to dismiss as Byrd suggests, the result would have likely been a third superseding indictment *not* dismissal. *United States v. Pi*, 174 F.3d 745, 748 (6th Cir. 1999) (citing *United States v. Senak*, 477 F.2d 304, 306 (7th Cir.) ("Dismissal of an indictment prior to trial simply does not raise any double jeopardy issues and does not bar subsequent prosecution for criminal acts described in that indictment under the doctrine of res judicata.")); *see also United States v. Davis*, 714 F. Supp. 853, 863 (S.D. Ohio 1988) (citing the saving statute 18 U.S.C. § 3288 for the proposition that reindictment within six months notwithstanding a dismissed indictment for procedural deficiencies is permissible even when the statute of limitations lapsed). Additionally, Byrd does not show that if he had been informed of these alleged deficiencies,

he would not have pled guilty but would have proceeded to trial. As outlined above, the evidence against Byrd was significant, and he faced a potential sentence of fifteen years to life incarceration. The record undermines Byrd's claim that he would not have pled guilty but for counsel's errors alleged in this ground.

**Ground Two: ineffective assistance of trial counsel, rendering guilty plea unknowingly and unintelligently entered for failing to object to the Court's alleged Rule 11 violations.**

**Arguments One and Two:** failing to object to Court's failure to explain the essential elements of Counts 2 and 3 during re-arraignment and failing to object to Court's erroneous advising concerning the elements of Count 1 during re-arraignment. [Record No. 222 at 15–17] Byrd does not demonstrate that the Court's plea colloquy with him violated Rule 11(b)(1)(G) of the Federal Rules of Criminal Procedure. During re-arraignment, the undersigned discussed the elements of all three counts and verified that the defendant understood and agreed that he committed the crimes charged in each count. [Record No. 159 at 24–29] The Court also discussed the 100 grams or more of flurofentanyl involved in the conspiracy charged in count one. *Id.* at 18.

Notwithstanding compliance with Rule 11, Byrd does not demonstrate that he would not have pled guilty if his attorney would have objected to the Court's purported failures. Stated differently, nothing Byrd argues is sufficient to overcome the presumption of verity in his sworn plea colloquy. Thus, he is bound by his answers that he understood the crimes charged and was in fact guilty of those crimes. *See United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993). As the government noted, "the rearraignment transcript, including the Court's detailed description of each offense, the prosecutor's thorough summary of the facts,

and Byrd's many criminal admissions, shows that he was well aware of 'the nature of each charge.'" [Record No. 229 at 6 (quoting Fed. R. Crim. P. 11(b)(1)(G))]

**Argument Three:** failing to object to Court's failure to discuss during re-arraignment that Byrd could be sentenced as a career offender if he pled guilty. [Record No. 222 at 17–18] The record does not support this claim. During re-arraignment, the Court explicitly informed Byrd that before the PSR was drafted and before the sentencing process commences, "it will be impossible for the Court or for your attorney to know exactly what the guideline range would be in your case." [Record No. 159 at 11–12] Therefore, Byrd cannot show deficient performance because not even the Court knew during re-arraignment that Byrd would later be sentenced as a career offender.

**Ground Three: ineffective assistance of trial counsel for failing to request a pre-plea presentence investigation report.**

Here, Byrd's bare argument lacks any legal basis. [*See* Record No. 222 at 20–22.] While many criminal defendants would prefer the benefit of a PSR before deciding to plea, that is not the customary order in this Court. Indeed, as the government notes, Byrd "points to no statute, rule of procedure, or case mandating the preparation of a pre-plea PSR." [Record No. 229 at 7 (quoting *Taylor v. United States*, Nos. 1:21-cv-01073-JDB-jay, 1:18-cr-10030-JDB, 2024 WL 1640991, at *5 (W.D. Tenn. Apr. 16, 2024))] "He likewise references no law showing that a failure to receive a pre-plea PSR renders counsel's performance ineffective." *Id.* (quoting *Taylor v. United States*, Nos. 1:21-cv-01073-JDB-jay, 1:18-cr-10030-JDB, 2024 WL 1640991, at *5 (W.D. Tenn. Apr. 16, 2024)). Byrd's claim fails under *Strickland*'s first prong.

**Ground Four: ineffective assistance of trial counsel for actions and inactions during the sentencing phase.**

**Argument One:** failing to object to enhancement as Byrd's "prior conviction for Kentucky First-Degree Robbery" is not "a serious violent felony" because "Kentucky First Degree Robbery may be committed by attempted taking of property." [Record No. 222 at 24–26] The Court agrees with the government's arguments (summarized below) concerning this claim. [Record No. 229 at 8–9] The term "serious violent felony" is described "in section 3559(c)(2) of title 18." 21 U.S.C. § 802(59). More specifically, Section 3559(c)(2)(F)(ii), defines "serious violent felony" as an offense that includes "as an element the use, attempted use, or threatened use of physical force against the person of another." Thus, because first-degree robbery in Kentucky includes an element for the use, attempted use, or threatened use of physical force against the person of another, it qualifies as a serious violent felony. *See United States v. Ingram*, 733 F. App'x 812, 815-16 (6th Cir. 2018) (holding that first degree robbery in Ky. Rev. Stat. § 515.020 constitutes a serious violent felony). The Court likewise agrees with the government's analysis concerning the inapposite attempted robbery charge in *United States v. Taylor*, 596 U.S. 845 (2022), to Byrd's first-degree robbery charge. [*See* Record No. 229 at 8–9.]

**Argument Two:** failing to object to the PSR's drug quantity calculations. [Record No. 222 at 26] Contrary to Byrd's assertion, his attorney *did* object to the drug quantity which was used to calculate his base offense level for sentencing. [Record Nos. 188 at 4 and 173 at 24] Thus, this claim is contradicted by the record. It also fails because the Sixth Circuit affirmed the drug quantity attributed to Byrd, and he cannot use his 2255 motion to relitigate that claim. [Record No. 218-1 at 5–6]

**Argument Three:** failing to request a downward variance considering the COVID-19 pandemic. [Record No. 222 at 26–28] Byrd was 34 years old at the time his PSR was created, and aside from mental-health-related issues, he had no serious medical conditions that would make him particularly susceptible to complications from COVID-19. [*See* Record No. 173.] And because he faced a significant sentence, varying would not have modified his term of incarceration to allow him to escape the effects of the pandemic. Simply put, the undersigned would have denied a motion to vary on that basis. Thus, Byrd shows neither deficient performance nor prejudice on this claim. *Humphrey v. United States*, No. 1:23-cv-1150, 2024 WL 4986214, at *12 (W.D. Mich. Dec. 5, 2024) (noting the defendant failed "to demonstrate any prejudice from [his attorney's] failure to request a further reduction based upon the COVID-19 pandemic, as he fails to demonstrate that the Court would have departed [or varied] on that basis").

**Argument Four:** failing to request a downward variance because the Court "may reject or vary from the two-level firearm enhancement and leadership enhancement on policy grounds." [Record No. 222 at 28–29] As discussed previously, Byrd's attorney objected to these enhancements, and the undersigned overruled both. Further, the Sixth Circuit upheld the imposition of those enhancements. Byrd therefore does not demonstrate that objecting to these enhancements generally, rather than on policy grounds, amounted to deficient performance. And as the government argues, the "fact that the Court could vary below the guidelines based on a policy disagreement does not mean that the Court would vary." [Record No. 229 at 11 (quoting *United States v. Robertson*, No. 2:18-CR-00054- DCLC-CRW, 2025 WL 818174, at *2 (E.D. Tenn. Mar. 14, 2025))] Indeed, the undersigned would not have varied on policy grounds. The enhancements were appropriate given the evidence against Byrd (as discussed

previously and testified to during the hearing on those objections) which established the basis for those two enhancements. [*See* Record No. 188.]

**Argument Five:** failing to argue that Byrd's guideline range of life was "greater than necessary as it would create a national disparity in sentencing." [Record No. 222 at 29–30] Byrd's argument fails to show his attorney performed deficiently. Despite not making this specific argument, Byrd's counsel objected to the drug quantity attributed to him and the three enhancements, all of which were instrumental in Byrd's ultimate guidelines range. Thus, he cannot show deficient performance for failing to make a sentencing disparity argument. *Strickland*, 466 U.S. at 688–90 (noting there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"). Either way, such an argument would not have been well taken by the undersigned, and in any event, Byrd was not sentenced to life.

One of the purposes of the advisory guidelines is to *avoid* unwarranted sentencing disparities. *See United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011). Therefore, Byrd advances "an unconventional ground for challenging a *within-guidelines* sentence" when he argues that his guidelines should have been challenged on the basis that they created an unwarranted sentencing disparity. *See id.* In short, Byrd received a within-guidelines sentence that the Sixth Circuit upheld on appeal. He cannot and does not show deficient performance or prejudice here.

**Ground Five: ineffective assistance of trial counsel for actions and inactions relating to Byrd's guilty plea, rendering it involuntary and unknowing.**

**Argument One:** failing to adequately explain "the sentencing consequences and/or sentencing exposure of pleading guilty and the disparity in sentencing of pleading guilty versus

proceeding to Jury Trial." [Record No. 222 at 34–35] Even if Byrd's counsel failed to adequately explain the consequence or disparity between sentences if he went to trial or pled guilty, his claim still fails. As the government argues, as long as "'a defendant is properly informed in accordance with Rule 11, an attorney's' failure to adequately advise about those same potential sentencing consequences 'does not satisfy the deficiency prong of *Strickland*.'" [Record No. 229 at 14 (quoting *United States v. King*, Nos. 5:21-042-DCR, 5:22-317-DCR-HAI, 2023 WL 3302813, at *5 (E.D. Ky. May 8, 2023))]

During re-arraignment, the Court painstakingly reviewed the penalties Byrd faced for each count, the future role of the PSR in sentencing, and the 3553(a) factors bearing on the ultimate sentence. [Record No. 159 at 10–14] And Byrd responded in the affirmative when asked whether he understood those penalties. *Id.* Byrd's decision to plead guilty *after* the Court informed him of the mandatory minimums and possible penalties he faced undermines his argument that he would not have pled guilty but for counsel's alleged failure.

**Argument Two**: failing to "explain the elements necessary for the government to secure a conviction and discuss the evidence as it bears on those elements." [Record No. 222 at 35–36] The same is true for this claim. Assuming Byrd's attorney failed to explain the elements the government would have to prove to secure a conviction on each count, the colloquy he had with the undersigned establishes that Byrd knew those elements before entering a plea. [Record No. 159 at 27–28] Byrd ultimately affirmed that he was pleading guilty to all three counts because he was indeed guilty of all three counts. *Id.* at 28. And Byrd presents no circumstances that would overcome the presumption of verity concerning his statements made during the plea colloquy. Therefore, he is bound by them.

**Argument Three:** failing to explain that Byrd "would have the right to a Special Jury Verdict Form to determine drug quantity as to the minimum and maximum drug quantity" had he gone to trial. [Record No. 222 at 35]  Byrd is mistaken, as the government correctly argues.  A jury would not have been called upon to determine the minimum and maximum drug quantity.  Rather, it would have decided "whether the drug quantity satisfied the applicable statutory thresholds."  [Record No. 229 at 15 (citing Sixth Circuit Pattern Jury Instructions 14.07A and 14.07B)]  Indeed, "[o]utside of the statutory threshold amounts, the drug quantity calculation is for the Court to determine at sentencing."  *Id.* (citing *United States v. McReynolds*, 964 F.3d 555, 562–64 (6th Cir. 2020).

**Ground 6: ineffective assistance of appellate counsel for failing to raise all the aforementioned claims and for failing to notify Byrd of "his right to file a Writ of Certiorari to the U.S. Supreme Court and explaining to him how he could do so."**

Byrd shows no error of appellate counsel here.  [*See* Record No. 222 at 36–39.]  As an initial matter, all his above claims lack merit, which means that his attorney could not be deficient for failing to raise them.

His second claim that appellate counsel did not inform him of "his right to file a Writ of Certiorari to the U.S. Supreme Court" also fails.  As the government points out, "[b]ecause defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari, which means that even the failure to file a petition for certiorari cannot amount to constitutionally ineffective assistance of counsel, counsel's performance at this stage cannot be constitutionally ineffective."  [Record No. 229 at 17–18 (quoting *Harper v. United States*, 792 F. App'x 385, 391 18 (6th Cir. 2019)].  For criminal defendants, "the Sixth Amendment does not guarantee the right to be consulted about discretionary appeals once the 'first tier' appeal has been denied."  *Id.* (quoting *United States v. Davis*, No. 1:20-cr-29-04, 2023 WL

- 15 -

8614222, at *5 (W.D. Mich. Dec. 13, 2023))] Byrd does not even attempt to argue the prejudice prong.

**Evidentiary Hearing**

Byrd asks for an evidentiary hearing on his ground one claim, and in his reply, he requests an evidentiary hearing on all grounds. [Record Nos. 222 at 12 and 230 at 2, 14] Section 2255 provides that "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The Sixth Circuit has recognized that when a movant alleges facts that entitle him to relief, "a district court may only forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (citation omitted).

Byrd is not entitled to an evidentiary hearing because his claims fail to allege facts that entitle him to relief or are contradicted by the record. As an initial matter, only grounds five and six have an arguable basis for holding an evidentiary hearing. Ground five contends that Byrd's attorney did not advise him of certain things regarding him entering a guilty plea. But as discussed previously, even taking Byrd's allegations as true, the Court's colloquy with him cured any alleged deficiencies. More specifically, Byrd's plea was still knowing and voluntary because the Court advised him of the penalties he faced on each count, and the government summarized the evidence against him—yet he still pled guilty.

Ground six asserts that appellate counsel failed to inform Byrd of his right to petition the Supreme Court for certiorari. But as addressed above, the Sixth Amendment does not

afford criminal defendants the right to be consulted about discretionary appeals. Under the circumstances presented here on both grounds (and all the other grounds), an evidentiary hearing is unwarranted because the facts Byrd alleges, do not entitle him to relief or are otherwise "clearly contradicted by the record." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013).

### IV. Conclusion

When the Court denies relief under § 2255, it must decide whether to issue a Certificate of Appealability. *See* Rule 11 of the Rules Governing § 2255 Proceedings; 28 U.S.C. § 2253(c)(1)(B). A Certificate of Appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, the movant must show that reasonable jurists could debate whether the motion should have been resolved differently or that the issues involved "deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Based on the foregoing, it is hereby **ORDERED** as follows:

1. Defendant/Movant Michael Byrd's motion under 28 U.S.C. § 2255 [Record No. 222] is **DENIED**.

2. The claims raised in Byrd's collateral proceeding are **DISMISSED**, with prejudice, and **STRICKEN** from the docket.

3. A Certificate of Appealability will not issue.

Dated: October 29, 2025.

Danny C. Reeves, District Judge
United States District Court
Eastern District of Kentucky